UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RITA ABSHER,<br><br>           PLAINTIFF,<br><br>VS.<br><br>FLEXIINTERNATIONAL SOFTWARE,<br>INC. AND JAY BELSKY,<br><br>           DEFENDANTS. | CIVIL ACTION<br>NO. 3:02 CV 171 (AHN)<br><br><br><br><br><br>September 8, 2004 |

**LOCAL RULE 56(A)(1) STATEMENT IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In contending that there is no genuine issue as to the following statement of material facts, the Defendants present the evidence in the light most favorable to the Plaintiff. By including facts into this statement for the purpose of summary judgment, the Defendants do not admit truth or materiality for all purposes.

1. Stefan R. Bothe is the President and Chief Executive Officer and a founder of FlexiInternational Software, Inc. ("Flexi") (Affidavit of Stefan R. Bothe, ¶1).

2. Flexi provides financial software and services. (Bothe Aff. ¶2).

3. In 1998, when the Plaintiff Rita Absher was hired, Flexi had over 300 client sites worldwide and over 200 employees. (Bothe Aff. ¶2).

4. Concerns in the business community over the Y2K conversion had a severe impact on the entire enterprise application software market, especially Flexi's business in the accounting software market. (Bothe Aff. ¶3).

5. Flexi's total revenues of approximately $24 million in 1998 fell to approximately $9.5 million in 2001, and active employees at the end of 2001 were approximately 50. (Bothe Aff. ¶3); (Plaintiff Deposition, 1/17/03, p. 25).

6. Rita Absher was hired by Flexi in June, 1998. (Bothe Aff. ¶4).

7. At the time of her hire, Ms. Absher completed an application for employment. (Bothe Aff., Exhibit 1).

8. The employment application form completed by Ms. Absher stated in part:

> "if I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and that the employer reserves the right to terminate my employment at any time, with or without cause and without prior notice, except as may be required by law. This application does not constitute an agreement or contract for employment for any specified period or definite duration. I understand that no supervisor or representative of the employer is authorized to make any assurances to the contrary and that no implied oral or written agreements contrary to the foregoing expressed language are valid unless they are in writing and signed by the employer's president." (Bothe Aff., Ex. 1).

9. The application form signed by Ms. Absher contained the following statement: **"DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE APPLICANT STATEMENT."** (Bothe Aff., Ex. 1).

10. Ms. Absher signed the application form, and her signature appears immediately below the following statement: "I certify that I have read, fully understand and accept all terms of the foregoing applicant statement." (Bothe Aff., Ex. 1).

11. Ms. Absher received a letter offering employment dated June 4, 1998, which contained the statement: "You understand that your employment with FlexiInternational Software is at will." Ms. Absher signed the employment letter on June 5, 1998. (Bothe Aff., ¶4, Ex. 2).

12. Ms. Absher's starting salary with Flexi was $65,000 annually. In 1999, her salary was increased to $67,500. In 2000, her salary was increased to $70,000. In 2001, her salary was increased to $74,000. (Bothe Aff., ¶5).

13. It was unusual for Flexi to pay a bonus to an employee who had worked less than one year. (Bothe Aff., ¶6).

14. Ms. Absher received a bonus of $3,000 for her work in 1999, which was paid in April, 2000. In August, 2000, Ms. Absher received a further payment of $2,814 as a discretionary bonus. (Bothe Aff., ¶6).

15. Fifty-three (53) Flexi employees received bonuses in 1999. Fifteen (15) of the employees receiving bonuses were female. (Bothe Aff., ¶7).

16. Ms. Absher was eligible to participate in the Flexi Incentive Stock Option Plan, and received a grant of 945 stock options in 1999. (Bothe Aff., ¶9; Ex. 3).

17. Ms. Absher received a further grant of 555 stock options in 2001. Options were granted pursuant to a written agreement entitled the Flexi Incentive Stock Option Agreement. (Bothe Aff., ¶8; Ex. 4).

18. Of the 117 employees who received grants of stock options in 1999, 43 were women, including Ms. Absher. In 1998, 38 female employees of Flexi received stock option grants. (Bothe Aff., ¶9, Ex. 3).

19. By 2001, Ms. Absher's workload had declined, and was limited primarily to her work as liaison for the Flexi account with Norwest Financial, also known as Wells Fargo. (Bothe Aff., ¶10; Ptf. dp., p. 24).

20. Ms. Absher completed time sheets for her work with Wells Fargo, which show a minimal workload in the first quarter of 2001. (Bothe Aff., ¶10, Ex. 5; Ptf. dp. p. 72).

21. In 2001, there were only two other employees in positions similar to Ms. Absher's, Cheryl Brennan and Cliff Gideon. (Bothe Aff., ¶11).

22.  Ms. Brennan and Mr. Gideon were able to absorb Ms. Absher's few remaining duties subsequent to her termination. (Bothe Aff., ¶11).

23.  A further reduction in force was projected for Ms. Absher's department in 2001 (Ptf. dp., pp. 62-63).

24.  As of April, 2001, Kevin Nolan was the Vice President of Client Services for Flexi and Ms. Absher's manager in the client services group.  (Kevin Nolan Deposition, p. 7)  Rosemarie Ferraro was the Director of Human Resources for Flexi. (Bothe Aff., ¶12, 15).

25.  On Thursday, April 5, 2001, Mr. Nolan called a conference for himself, Ms. Absher, and two other Flexi employees, Cheryl Brennan and Adrian Marchi of the sales group, for the purpose of reassigning offices.  Mr. Nolan proposed to move Ms. Absher and Ms. Brennan who each occupied a 2-person interior office to a large office, to be shared on the three days per week that Ms. Brennan would be working. (Bothe Aff., ¶12, 13, Ex. 6; Ptf. dp., pp. 79-80, 82).

26.  Ms. Absher reacted to the proposed office change in an unprofessional, volatile and abusive way, and walked out of the conference. (Bothe Aff., Ex.6; Nolan Dp. pp. 14-16).

27. On Monday, April 9, 2001, Ms. Absher sent an e-mail message of apology to Adrian Marchi, Flexi's vice-president of sales an customer service, and to Frank Grywalski, the president of Flexi. (Bothe Aff., ¶14, Ex. 7).

28. On April 5, 2001, Ms. Absher complained to Rosemarie Ferraro about offensive conduct by a co-worker, Jay Belsky. (Bothe Aff., ¶16, Ex. 8). Ms. Absher alleges that in August, 1999, when she was concerned about her mother's breast cancer, she approached Mr. Belsky to ask about his experience with his wife's illness, and in his explanation Mr. Belsky lifted her arm, drew around her left breast with his finger and said that this was where they were going to cut her mother, and tapped her chest about three times. (Bothe Aff., Ex. 9; Ptf. dp., p. 114).

29. Ms. Absher alleges that on March 28, 2001, in a conversation with Mr. Belsky and with Cheryl Brennan about the color of Ms. Absher's shirt, Mr. Belsky held up an orange and then a yellow pad of paper next to Ms. Absher's chest and spoke of comparing their colors to the color of her sweater. (Bothe Aff., Ex. 9; Ptf. dp., pp. 144-145; Affidavit of Cheryl Brennan, ¶ 8).

30. Ms. Absher alleges that Mr. Belsky often made comments about colors, holding objects in front of women to supposedly compare the colors of the objects with the color of their clothing, and sometimes touching them. (Ptf. dp., pp. 126-130). Ms. Absher alleges that by October or November, 2000, she had begun to complain about

Mr. Belsky's conduct to Rosemarie Ferraro, the human resources manager. (Ptf. dp., pp. 130-131).

31.  With respect to the orange and yellow pad incident, Ms. Absher did not ask Ms. Ferraro to talk to Mr. Belsky, but said that she would talk to him herself. (Ptf. dp., p. 147).

32.  Ms. Absher alleges that on Monday, April 2, 2001, when she asked Mr. Belsky to obtain a telephone number for her, which he did from his computer, Mr. Belsky while seated in his chair motioned or waived to her and touched her pelvic area, after which he apologized. (Bothe Aff., Ex. 9; Ptf. dp. 150, 156-157).

33.  Ms. Absher alleges that on April 3, 2001, Ms. Absher and Mr. Belsky were together in his office and Mr. Belsky noticed her blazer jacket was fastened with Velcro strips. He touched the blazer to open it and to look at the strips. Ms. Absher commented that she would not buy another such blazer because the Velcro "pilled" (made knots) the material of he sweater, and Mr. Belsky began to cut pieces of Velcro which he had and to put them onto the strips, seemingly to prevent the pilling of the sweater. (Bothe Aff., Ex. 9; Ptf. dp. 160-162).

34.  In the incident concerning the Velcro buttons on April 3, 2001, Mr. Belsky asked Ms. Absher how her mother was doing and asked if her mother was as big busted or as big chested as Ms. Absher. (Ptf. dp. 160-161).

35. In response to the touching of her blazer and Velcro fasteners, Ms. Absher pulled away and was shocked. (Ptf. dp., p. 161).

36. In the conversation between Ms. Absher and Ms. Ferraro on April 5, 2001, they agreed they would both address Mr. Belsky about his behavior. They also spoke about Ms. Absher's conduct that day in the conference with Mr. Nolan on the rearrangement of offices. (Bothe Aff., Ex. 8; Ptf. dp., pp. 170-172).

37. Rosemarie Ferraro made a memorandum of her various discussions with Ms. Absher, which was maintained by Flexi as a business record. (Bothe Aff., ¶16, Ex. 8).

38. Ms. Absher alleges that on April 5, 2001, she and Mr. Belsky were walking together when Mr. Belsky draped his arm over her right shoulder, held up a yellow handled scissors next to her shirt and commented on the colors. Ms. Absher told Mr. Belsky to stop that and to stop holding things up to her chest, and Mr. Belsky said he would never do it again. (Bothe Aff., Ex. 9, Ptf. dp. 167, 168).

39. On Friday, April 6, 2001, Mr. Nolan met with Ms. Absher and had a discussion about her conduct and attitude, and her prospects for her future with Flexi. (Bothe Aff., ¶15, Ex. 6; Kevin Nolan Deposition, 6/12/04, pp. 18-22).

40. In the meeting on April 6, 2001, Mr. Nolan discussed Ms. Absher's: workload, and other possible work for her. Ms. Absher told Mr. Nolan she did not want

to do sales, did not want to be a product consultant because it required too much travel, and did not want to be in product development. (Bothe Aff. ¶ 22, Ex. 11; Nolan dp. pp. 18-22).

41. Since the sales group rather than Mr. Nolan's client services group was going to pursue future business from existing clients, Mr. Nolan did not see any productive work to be done by Ms. Absher. (Nolan dp. pp. 22-24).

42. Later on April 6, 2001, Ms. Absher asked to speak again to Mr. Nolan, and attributed her outburst in the conference to the stress she allegedly felt from Mr. Belsky's conduct. (Ptf. dp., pp. 172-174; Nolan dp. pp. 27-28).

43. Ms. Absher assured Mr. Nolan on April 6, 2001 that she would continue to participate in an upcoming Flexi client event known as Flexi User Day. (Bothe Aff., ¶19, Ex. 6; Nolan dp. pp. 29-34).

44. Mr. Nolan recorded his conversations with Ms. Absher and the events connected with them in a contemporaneous memorandum, which was maintained as a business record by Flexi. (Bothe Aff., ¶22, Ex. 6).

45. On Monday, April 9, 2001, Ms. Absher confirmed her participation in Flexi User Day. (Bothe Aff., ¶19, Ex. 6).

46. On April 9, 2001, Ms. Absher sent Ms. Ferraro a statement of her allegations against Mr. Belsky. (Bothe Aff., ¶17, ex. 9).

9

47. On Monday, April 9, 2001, Ms. Ferraro met with Mr. Belsky and warned him that his objectionable conduct must cease, under threat of termination. Frank Grywalski, the company president, also warned Mr. Belsky. (Bothe Aff., ¶18, Ex. 8).

48. On April 10, 2001, Ms. Absher asked Mr. Nolan if she could skip participation in Flexi User Day and take some time off to recover from Mr. Belsky's conduct. (Nolan dp. p. 34) Mr. Nolan and Ms. Ferraro agreed, assuming that Ms. Absher would arrange for the completion of her responsibilities for Flexi User Day. (Bothe Aff., ¶19, Ex. 6, 8).

49. After being excused on April 9, 2001, Ms. Absher went to Mexico, where her long-time fiancé maintained a charter boat business called Albatros Charters. (Bothe Aff., ¶19, Ex. 6, 10).

50. Flexi made various attempts to communicate with Ms. Absher in Mexico during the two weeks of her absence between April 10 and April 24, 2001, concerning Flexi User Day, but without success. (Bothe Aff., ¶19, Ex. 6, 10).

51. The Flexi User Day event did not take place, and there was detriment to Flexi's relationship with clients. (Bothe Aff., ¶20).

52. Ms. Absher admits that she failed to fulfill her responsibilities to give notice to clients for Flexi User Day, or to notify anyone at Flexi to accomplish these tasks. (Ptf. dp. 93-95, 103).

53. Ms. Absher was expected to return to Flexi on Tuesday, April 24, 2001, but she did not appear or call. (Bothe Aff., ¶21, Ex. 6, 8; Ptf. dp., p. 96).

54. Based upon revenue projections, Flexi asked Mr. Nolan in February, 2001 to plan 2 lay offs from his client services group. (Nolan dp. pp. 58-60, 62).

55. Mr. Nolan laid off a product consultant, Sharon Fernandez in February, 2001 and accepted the resignation of another product consultant, Tony D'Auria in March, 2001 (Nolan, dp. pp. 60-61, 63-64).

56. Since revenue results from the first quarter of 2001 were below the expense budget, and revenue projections for the second quarter showed no improvement, Mr. Nolan decided to lay off Ms. Absher, so that he could reduce the "head count" to fit available work. (Nolan dp., pp. 64. 76).

57. Mr. Nolan laid off two more of his employees in 2001, Doug Freedland in July and John Spizer in August after which his staffing was commensurate with the workload. (Nolan dp. pp. 76-79).

58. When Ms. Absher arrived at Flexi at about 11:00 a.m. on Wednesday, April 25, 2001, Mr. Nolan told her that she was being terminated, and that her position would be eliminated because of insufficient work. (Bothe Aff., ¶22, Ex. 8, 11; Nolan dp. p. 86).

59.  Mr. Nolan put his thoughts concerning Ms. Absher's future with Flexi into a written memo dated April 19, 2001, which was before Ms. Absher failed to return on time from her trip to Mexico. (Bothe Aff., ¶22, Ex. 11). Ms. Absher was terminated from employment at Flexi effective April 30, 2001. (Bothe Aff., ¶4).

60.  Ms. Absher filed an Affidavit of Illegal Discriminatory Practice with the Connecticut Commission on Human Rights and Opportunities on May 2, 2001. (Bothe Aff., ¶23, Ex. 12).

THE DEFENDANTS,

**FlexiInternational Software, Inc. and Jay Belsky**

By: _/s/ Michael N. LaVelle_
Michael N. LaVelle (CT 06170)
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06604
Telephone: (203) 330-2112
Facsimile: (203) 330-2288

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was sent via United States mail on September 8, 2004 to all counsel and pro se parties of record.

Michael J. Melly, Esq.
Bartinik, Gianacoplos, Bartinik,
Bartinik & Grater, P.C.
100 Fort Hill Road
Groton, CT  06340
(860) 445-8521
(860) 445-5873 facsimile

_____
Michael N. LaVelle

BPRT/69369.1/MNL/518011v1