UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RITA ABSHER, <br><br> PLAINTIFF, <br><br> VS. <br><br> FLEXIINTERNATIONAL SOFTWARE, INC. AND JAY BELSKY, <br><br> DEFENDANTS. | CIVIL ACTION <br> NO. 3:02 CV 171 (AHN) <br><br><br><br> May 6, 2005 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

The Plaintiff's ninth motion to further enlarge the time to respond to the Defendants' motion for summary judgment was denied by order of the court dated April 5, 2005. Nevertheless, the Plaintiff submitted a response on April 29, 2005 (received by the Defendants on May 2, 2005) along with another motion for enlargement of time. In the event that the court accepts the Plaintiff's response, the Defendants submit this reply brief in accordance with Local Rule 7(d), Federal Rules of Civil Procedure.

The Plaintiff's Remaining Claims

Of the 13 counts in the amended complaint dated May 2, 2005, the Plaintiff has dropped some and failed to respond to the Defendants' motion for summary judgment

as to others. The status of the Plaintiff's claims now seems to be as follows:

FIRST COUNT: In the amended complaint and in her brief (Plaintiff's Brief, pp. 9-21), the Plaintiff claims that she was subject to a hostile work environment based on sexual harassment in violation of Title VII.

SECOND COUNT: In the amended complaint, the Plaintiff claimed that she was a victim of gender discrimination in violation of Title VII because male employees had more favorable treatment than female employees, including the Plaintiff, in bonuses in 1998, 1999 and 2000, in stock options in 1998 and 1999, and in office space. The motion for summary judgment pointed out that such claims were barred as Title VII claims because the Plaintiff did not make a timely agency filing with the Equal Employment Opportunity Commission or the Connecticut Commission on Human Rights and Opportunities. In her brief, the Plaintiff addressed neither her claims concerning bonuses, stock options and office space, nor the defense of statute of limitations and failure to exhaust administrative remedies.

Instead, the Plaintiff argued in her brief (Plaintiff's Brief, pp. 29-32) that her claim of hostile work environment is also a claim of gender discrimination.

THIRD COUNT: The Third Count is identical to the Second Count. Again, the Plaintiff's brief did not address the defense of statute of limitations and failure to exhaust administrative remedies.

FOURTH COUNT: In the amended complaint and in her brief (Plaintiff's brief, pages 21-29), the Plaintiff claims that her termination from employment was retaliation for her complaints of sexual harassment, in violation of Title VII.

FIFTH COUNT: The Fifth Count alleges sexual harassment in violation of Connecticut General Statute 46a-60(a)(8), and is presumably the state law counterpart of the First Count.

SIXTH COUNT: The Sixth Count does not contain any substantive allegations, but merely says the Plaintiff was discriminated against in violation of Connecticut General Statute 46a-60(a)(1). The Plaintiff's brief does not explain what the Sixth Count is about.

SEVENTH COUNT: The Seventh Count alleges retaliation in violation of Connecticut General Statute 46a-60(a)(4), and is presumably the state law counterpart of the Fourth Count.

EIGHTH COUNT: The Eighth Count in the amended complaint lists a variety of contractual claims, but the only one that is discussed in the Plaintiff's brief is a claim of an implied contract for a 15% bonus in the Plaintiff's first year of employment (Plaintiff's Brief, pages 32-39). The motion for summary judgment raises a defense of statute of limitations to this claim, which the Plaintiff's brief does not address.

NINTH COUNT: The Plaintiff states in her brief that she is withdrawing the Ninth

Count (Plaintiff's Brief, p. 2).

TENTH COUNT: The Tenth Count in the amended complaint lists a variety of contract claims under the doctrine of promissory estoppel, but does not mention the 15% bonus. However, the Plaintiff's brief (Plaintiff's Brief, pages 39-40) argues that the 15% bonus is a claim under promissory estoppel. Again, the Plaintiff does not respond to the statute of limitations defense.

ELEVENTH COUNT: The amended complaint and the Plaintiff's brief (Plaintiff's Brief, pages 40-41) allege a claim of assault and battery against the Defendant Jay Belsky.

TWELFTH and THIRTEENTH COUNTS: The Plaintiff states in her brief (Plaintiff's Brief, page 2) that she is withdrawing the Twelfth and Thirteenth Counts.

The Plaintiff Was Not Subject to a Hostile Environment or to Retaliation

The Plaintiff's argument in favor of her hostile environment and retaliation claims consists mainly of inflating the number and significance of the incidents attributable to Mr. Belsky (Plaintiff's Brief, pages 10-12). The Plaintiff claims first as a generalization that in 2000, Mr. Belsky stood close to women and occasionally touched them (Plaintiff's Brief, page 2, 10), and that he touched the Plaintiff's arm (Plaintiff's Brief, page 6). The Plaintiff compares this alleged conduct to the conduct described in Torres v. Pisano, 116 F 3d 625, 628 (2nd Cir. 1997), but this comparison actually illustrates why

4

the conduct attributed to Mr. Belsky is not actionable. The Plaintiff in Torres complained that a habitually drunken direct supervisor called her crude and vulgar names and made overtly sexual comments to her and about her. By contrast, the most inappropriate remark attributed to Mr. Belsky is that he said that another female employee, Cheryl Brennan, had "dancer's legs." (Plaintiff's Brief, p. 14)

The Plaintiff also attempts to include the mastectomy discussion incident (Plaintiff's Brief, p. 11) in her list of actionable conduct, omitting that it occurred in 1998 or 1999. (Plaintiff's Deposition, pp. 113-114). The Plaintiff also omits that when the first incident occurred on March 28, 2001 and she spoke to the Human Resources Director, Rosemarie Ferraro, about it, she declined to have Ms. Ferraro speak to Mr. Belsky (Ptf. Dp., p. 147).

The Plaintiff was thus subject to four incidents, March 28, April 2, April 3, and April 5, none of which involved any vulgar remarks or sexually-oriented statements. When the Plaintiff complained to Rosemarie Ferraro about the April 5 incident, Ms. Ferraro firmly reprimanded Mr. Belsky (Ferraro Deposition, pp. 39-42, copies attached).

The Plaintiff questions whether Mr. Belsky was a supervisor, in an attempt to negate the Farragher/Ellereth affirmative defense. But those cases refer to "high-echelon officials," and "managers," such as a company president, Farragher v. City of Boca Raton, 524 U.S. 775, 789 (1998), and to tangible employment actions by an

immediate or successively higher supervisor. <u>Burlington Industries, Inc. v. Ellereth</u>, 524 U.S. 742, 765 (1998). By contrast, the Plaintiff's supervisor was Kevin Nolan (Plaintiff Affidavit, ¶ 11), not Mr. Belsky. Rosemarie Ferraro, on whom the Plaintiff relies in submitting excerpts from her deposition, testified as follows:

> **Q:** When you were the director there and even prior to that I guess, were you aware of who the various managers and supervisors were?
>
> **A:** Yes.
>
> **Q:** Did Mr. Belsky have any managerial duties or responsibilities?
>
> **A:** I don't believe so, no.
>
> **Q:** Do you know whether he had any supervisory responsibilities or duties?
>
> **A:** Possibly from the standpoint of directing their work or he's at the client site; something needs to be done; let me call so-and-so, but I don't recall Jay having any direct reports.
>
> **Q:** You don't think he had subordinates –
>
> **A:** I don't think.
>
> **Q:** -- in the traditional term of being manager or supervisor?
>
> **A:** I don't believe so. (Ferraro Deposition, pp. 19-20).

Thus the Plaintiff has not refuted the fact that she is complaining about minor

incidents occurring between March 28 and April 5, 2001, in which a co-worker said nothing sexual and did nothing sexual – his transgression, as the Plaintiff puts it, was uncomfortable closeness and invasion of space (Plaintiff's Brief, p. 2). When the Plaintiff complained, Mr. Belsky was warned on April 6, 2001 that causing discomfort to other employees had to stop.

Mr. Belsky's conduct was not sexual harassment and did not create a hostile environment. Moreover, it could not reasonably be viewed as unlawful so as to support a claim of retaliation. In spite of the Plaintiff's repetitions and embellishments, no genuine issue of fact exists that the conduct of Mr. Belsky is far below the threshold needed to show a workplace permeated with discrimination, intimidation, ridicule or insult. Liebowitz v. New York City Transit Authority, 252 F 3d 179, 188 (2nd Cir. 2001).

The Plaintiff Did Not have a Contract For a 15% Bonus

The Plaintiff now claims to have had a contractual promise for a 15% bonus to be paid in her first year of employment, based on her pre-hire interview with Walter Martin (Plaintiff's. Brief, p. 32). But since such an interview had to have occurred prior to June 4, 1998, the day on which the Plaintiff received a written offer of employment (Plaintiff Exhibit 1), and since this case was filed on January 29, 2002, the contract claim is well outside the two-year statute of limitations for payment of wages, Connecticut General Statute § 52-596; Williams v. Cushman and Wakefield of Connecticut, Inc., 1998 WL

246493 (Conn. Super. 1998). Indeed, although the statute of limitations was raised in the Defendants' brief in support of the motion for summary judgment, the Plaintiff does not try to refute it, and makes no mention of it.

Moreover, to the extent that the Plaintiff is claiming that her pre-hire interview was supposed to result in an oral contract, it is also outside the three-year statute of limitations provided in Connecticut General Statutes § 52-581. The only writing that resulted from the interview, the offer of employment letter dated June 4, 1998 (Plaintiff Exhibit 1), does not contain a promise of a bonus, but rather says only that the Plaintiff was eligible to receive a bonus based on both individual and company objectives.

The Plaintiff also engages in an odd discussion of employment at-will (Plaintiff's Brief, p. 38), which seems irrelevant because the Plaintiff does not claim any contractual rights beyond her untimely claim for a 15% bonus. In any case, the Plaintiff has misunderstood the Connecticut law on disclaimers of contract in the employment context. Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 214 fn 5 (1987); Davis v. Liberty Mutual Insurance Co., 218 F. Supp. 2d 256, 260 (D. Conn. 2002).

A reservation of at-will employment is not itself a contract, it is rather a disclaimer of any intention to make a contract, leaving the employment relationship as at-will for both parties. Torosyan v. Beihringer Engelheim Pharmaceuticals, Inc., 234 Conn. 1, 14 (1995). Thus the Plaintiff's dubious assertion that she did not understand the disclaimer

on her application form (Plaintiff's Aff., ¶ 4) is also beside the point – her lack of understanding does not create a contractual right, since the employer's intention to remain at will has been published for the benefit of anyone who is able to understand it.

CONCLUSION

Although ambiguous circumstances may be reserved to a decision by a jury, there is nothing ambiguous about the Belsky incidents as actually described the Plaintiff, as opposed to her conclusions and characterizations. Mr. Belsky was not the Plaintiff's supervisor and did nothing to interfere with her work. In one of the four incidents, the Plaintiff went to Mr. Belsky's office to ask him for a telephone number. In another incident, the Plaintiff was part of a three-way discussion that included Mr. Belsky and Ms. Brennan. This is a classic case of the Plaintiff attempting to use her own self-serving characterizations to transform an annoying co-worker into an harassing co-worker.

The Plaintiff does not have a predicate foundation for sexual harassment, retaliation or assault, and she certainly does not have an enforceable contract for a 15% bonus. There are no ambiguous circumstances to resolve, since accepting the Plaintiff's description of the four incidents as accurate (as opposed to her characterizations), she does not begin to meet the threshold necessary to prove a hostile environment, and even if she did, Ms. Ferraro acted promptly to correct Mr.

Belsky's behavior, thus creating an affirmative defense.

For all of the reasons stated in the Defendants' Brief in Support of its Motion for Summary Judgment, summary judgement should enter on all of the remaining counts of the amended complaint.

> **THE DEFENDANTS,**
>
> **FlexiInternational Software, Inc. and Jay Belsky**
>
> By: *[signature]*
> Michael N. LaVelle (CT 06170)
> Pullman & Comley, LLC
> 850 Main Street
> Bridgeport, CT 06604
> Telephone: (203) 330-2112
> Facsimile: (203) 330-2288

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was sent via United States mail on May 6, 2005 to all counsel and pro se parties of record.


Michael J. Melly, Esq.
Mullins & Michaud
682 Prospect Avenue
Hartford, CT  06105
Telephone: (860) 231-7000
Facsimile:   (860) 231-8400

_____
Michael N. LaVelle


BPRT/69369.1/MNL/557027v1