UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RITA ABSHER                         :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :
                                    :    CIVIL NO. 3:02cv171 (AHN)
FLEXIINTERNATIONAL SOFTWARE,        :
INC. AND JAY BELSKY                 :
                                    :
        Defendants.                 :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action in thirteen counts brought by the plaintiff, Rita Absher ("Absher"), against her prior employer, FlexiInternational Software Inc. ("Flexi") and a former co-worker at Flexi, Jay Belsky ("Belsky") (collectively, the "Defendants"). Specifically, in Counts 1 through 7, Absher alleges that under federal and state law, she was discriminated against by her employer on the basis of her gender, was subjected to a hostile work environment, and that Flexi retaliated against her for complaining about the violation of her rights. In Counts 8 through 10, Absher asserts various contract claims against Flexi. Count 11 is an assault claim against Belsky. Finally, in Counts 12 and 13, respectively, Absher alleges negligent supervision and an Erisa violation.

Currently pending is the Defendants' motion for summary judgment (doc. # 81). As Absher failed to file a timely

objection[1], the court considers the defendants' motion as
unopposed.

<u>STANDARD OF REVIEW</u>

The Second Circuit, in the seminal case of <u>Vermont Teddy
Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241 (2d Cir. 2004)
addressed the proper analysis that districts courts should employ
when presented with an unopposed motion for summary judgment.  In
<u>Vermont Teddy Bear</u>, the court held that "Fed. R. Civ. P. 56,
governing summary judgment motions, does not embrace default
judgment principles." <u>Id</u>. at 242.  Thus, "[e]ven when a motion
for summary judgment is unopposed, the district court is not
relieved of its duty to decide whether the movant is entitled to
judgment as a matter of law." <u>Id.</u>  Accordingly, the familiar
summary judgment standard still applies.  Summary judgment is
appropriate when "there is no genuine issue as to any material
fact and . . . the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c).  It is the movant's

---

[1]      The defendants' motion for summary judgment was filed
on September 8, 2004.  On March 11, 2005, upon granting Absher's
seventh motion for an extension of time in which to respond to
the defendants' summary judgment motion, the court stated that no
further extensions of time would be granted.  Absher,
nevertheless, failed to file her responsive pleading  within the
time requested and subsequently, on March 31, 2005, filed yet
another motion for extension of time.  The court denied the
requested extension and, thereafter, on April 29, 2005, Absher
again requested additional time which the court also denied.
Accordingly, the defendants' motion is before the court absent
objection.

burden to show that no genuine factual dispute exists.  See

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Vermont

Teddy Bear, 373 F.3d at 244.  In reviewing a summary judgment

motion, the court must resolve all ambiguities and draw all

reasonable inferences in the non-movant's favor.  See Giannullo

v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).

However, "[i]f the evidence submitted in support of the

summary judgment motion does not meet the movant's burden of

production, then summary judgment must be denied even if no

opposing evidentiary matter is presented."  Vermont Teddy Bear,

373 F.3d at 244 (citations omitted).  "Moreover, in determining

whether the moving party has met this burden of showing the

absence of a genuine issue for trial, the district court may not

rely solely on the statement of undisputed facts contained in the

moving party's Rule 56.1 statement.  It must be satisfied that

the citation to evidence in the record supports the assertion."

Id.  Finally, "[a]n unopposed summary judgment motion may also

fail where the undisputed facts fail to show that the moving

party is entitled to judgment as a matter of law." Id. at 245

(quotation marks and citations omitted).

<u>FACTS</u>

The Defendants' Local Rule 56 statement and accompanying

exhibits, viewed most favorably to Absher, show the following

relevant undisputed facts:

3

Flexi is a provider of financial software and services. In 1998, when Absher was hired, Flexi had over 300 client sites worldwide and over 200 employees. At the end of 2001, Flexi had only 50 remaining active employees.

Absher commenced her employment with Flexi on or about June 29, 1998, as a project manager. When Absher was hired, she completed an application for employment and signed a letter of hire. Absher's employment application form stated in part:

> If I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and that the employer reserves the right to terminate my employment at any time, with or without cause and without prior notice, except as may be required by law. This application does not constitute an agreement or contract for employment for any specified period or definite duration. I understand that no supervisor or representative of the employer is authorized to make any assurances to the contrary and that no implied oral or written agreements contrary to the foregoing expressed language are valid unless they are in writing and signed by the employer's president.

The form also contained the following language: "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE APPLICANT STATEMENT." Absher signed the application form. Absher received a letter offering employment on June 4, 1998, that contained the statement: "You understand that your employment with FlexiInternational Software is at will." Absher signed the employment letter on June 5, 1998.

Absher's starting salary was $65,000. In 1999, her salary increased to $67,500. In 2000, her salary increased to $70,000.

4

At the time she was terminated in 2001, her annual salary was $74,000. Absher's letter of hire indicates that she was eligible for a bonus. She was paid a $3,000 bonus in April 2000 for the year 1999. Also, in August of 2000, she received an additional bonus payment of $2,814. Absher's letter of hire also indicates that she was eligible to participate in Flexi's stock option incentive plan. She received a grant of 945 options in 1999, and 555 stock options in 2001.

On April 5, 2001, Kevin Nolan ("Nolan"), who was vice president of client services and Absher's manager, scheduled a conference for himself, Absher, Cheryl Brennan ("Brennan"), Absher's co-worker, and Adrian Marchi ("Marchi"), Flexi's vice president of sales and customer service. The purpose of this meeting was to reassign office space. At the meeting, Nolan informed Absher and Brennan -- each of whom occupied two-person interior offices at that time -- that they would share a two-person office. Brennan only worked three days a week. Absher walked out of the conference.

On Friday, April 6, 2001, Nolan met with Absher to discuss her conduct at the meeting, her workload, and other possible work for her at Flexi. Later that day, Absher spoke to Nolan again, and attributed her outburst at the meeting to stress she allegedly felt as a result of the conduct of Jay Belsky ("Belsky"), a senior consultant at Flexi. Nolan offered to

transfer her to a different position where she would not be in proximity to Belsky.  Absher told Nolan that she was not interested in a position in other departments such as sales or product development, nor did she want to be a product consultant.

In its Rule 56a(1) statement of facts, Flexi recounts the following instances of Belsky's offensive conduct alleged by Absher: First, in August, 1999, when she was concerned about her mother's breast cancer, she approached Belsky to ask about his wife's experience with breast cancer.  Belsky's response was to lift Absher's arm and then to draw around her left breast with his finger, saying that was where they would cut her mother, and tapped her breast three times.

Second, Absher alleges that on March 28, 2001, in a conversation with Belsky and Brennan, Belsky held up an orange and then a yellow pad of paper to Absher's chest, and spoke of comparing the colors of those items to the color of her sweater. After that incident, Absher alleges that she complained to Human Resources Manager Rosemarie Ferraro ("Ferraro"), that Ferraro offered to speak to Belsky, but Absher told her that she would talk to Belsky herself.

Third, on April 2, 2001, when Absher asked Belsky to obtain a telephone number for her, Belsky while seated in his chair, motioned and touched her pelvic area, after which he apologized and handed her the number.  Fourth, on April 3, 2001, Belsky,

noticed her blazer was fastened with velcro "closures", thereupon
he opened her blazer.  Absher commented that she would not buy
another jacket like it because the velcro caused "pilling" of the
jacket's material, and Belsky proceeded to remove the piling from
pieces of velcro.  During this interaction, Belsky asked Absher
if her mother was as big busted or big chested as Absher.  In
response, Absher pulled away and was shocked.  Absher admitted
that she did not tell Belsky to stop this behavior.

On April 5, 2001, Absher met with Ferraro to complain about
Belsky's conduct.  Absher and Ferraro agreed that they would each
speak to Belsky about his behavior.

The same day that Absher met with Ferraro, another incident
occurred with Belsky.  Belsky draped his arm around Absher's
shoulder, held up a yellow handled scissors next to her shirt and
commented on the colors.  Absher told Belsky to stop this
behavior and to stop holding things up to her chest.  Belsky said
he would not do it again.

On April 9, 2001, Absher sent a letter of apology to Marchi
regarding her conduct at the April 5, 2001, meeting as well as to
Frank Grywalski ("Grywalski"), at that time president of Flexi.
That same day, Absher also sent a written statement to Ferraro
complaining about Belsky's conduct.  Also on that same day,
Ferraro spoke to Belsky, warning him that his conduct was
inappropriate and that if it continued, it could result in his

termination.  Additionally, Absher was told to contact Ferraro immediately if there were any further incidents.  Additionally, Grywalski informed Absher that Flexi would not tolerate Belsky's behavior.

On April 10, 2001, Absher made a request to take some time off to travel to Mexico and to be excused from participation in a customer event known as Flexi User Day.  Flexi approved these requests.  While she was away, Flexi attempted to contact her regarding Flexi User Day.  Absher admitted that she failed to fulfill her responsibilities to give notice to clients for Flexi User Day or to arrange for someone else to do so.  Flexi ultimately canceled the event.

On April 19, 2001, Nolan prepared a memorandum about Absher's shortcomings.  Absher did not return to work as expected on April 24, 2001.  She did not communicate with Flexi and did not return until April 25, 2001, at 11:00 a.m.  Absher was told on April 25, 2001 that her position would be eliminated because of insufficient work effective April 30, 2001.  Flexi maintains that its decision to terminate Absher's employment was based on the fact that revenue projections for the second quarter showed no improvement.  A male and a female employee, Brennan and Gideon, were assigned to perform Absher's duties.  On May 2, 2001, Absher filed a complaint with the CHRO.

In addition to terminating Absher, Flexi laid off two other

8

employees from Nolan's client services group in early 2001
because of declining revenue projections.  Specifically, Nolan
laid off a product consultant, Sharon Fernandez, in February
2001, and accepted the resignation of another product consultant,
Tony D'Auria in March, 2001.  Nolan also laid off two additional
employees in the summer of 2001: Doug Freeland in July, 2001 and
John Spizer in August, 2001.

DISCUSSION

The defendants move for summary judgment on Absher's sexual
harassment/ hostile work environment claims, her gender
discrimination claims, her retaliation claims, her ERISA claim
and her state common law claims.  Upon review of the defendants'
summary judgment briefing and statement of facts, as well as the
evidence in the record, and resolving all ambiguities and drawing
all reasonable inferences in favor of the non-moving party, the
court addresses each of the defendants' arguments as set forth
below.

I.    Sexual Harassment/ Hostile Work Environment Claims

Absher claims that she was subjected to a hostile work
environment under Title VII and subjected to sexual harassment
under Conn. Gen. Stat. § 46a-60(a)(8)[2] as a result of Belsky's

---

[2]In Count Five, Absher seeks relief under the Connecticut
Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §
46a-60(a)(8) which is governed by the same analysis as her Title
VII claim in Count One alleging a hostile work environment.  See
Brittell v. Department of Corrections, 247 Conn. 148, 164 (1998);

allegedly offensive conduct and language in the workplace and
Flexi's alleged failure to stop Belsky's conduct.

In moving for summary judgment, the defendants first argue
that the August 1999 incident is time-barred and not a proper
basis for her claims because Absher did not timely make a
complaint before the Equal Employment Opportunities Commission
("EEOC") or the Connecticut Commission on Human Rights and
Opportunities ("CCHRO") with respect to this incident.  The court
agrees.

A plaintiff seeking to invoke the protections of Title VII
of the Civil Rights Act of 1964 must file a charge of
discrimination with the EEOC within 300 days of the alleged act
of discrimination.  See 42 U.S.C. § 2000e-5(e)(1).  Claims
alleging discriminatory incidents that are not brought within
that 300-day limit are barred in a suit in federal court.  See
Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.
1998).  Similarly, in order to invoke the Connecticut fair
employment practices law, a plaintiff is required to file an
administrative charge with the state agency within 180 days of
the alleged discriminatory conduct.  See Conn. Gen. Stat. § 46a-
82(e).

Absher filed her complaint with the CHRO on May 2, 2001.

---

see Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96,
103 (1996).

Thus, any alleged conduct that occurred prior to July 5, 2000, would be barred under Title VII, and any alleged discriminatory conduct that occurred prior to November 2, 2000, would be barred under CFEPA.  Thus, Absher's claim regarding Belsky's conduct in August 1999 is time-barred because it is well-outside the statutory time limits.

Further, Flexi argues that summary judgment is appropriate as to the sexual harassment and hostile work environment claims because the conduct about which Absher complains is not sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment actionable under Title VII or under state law, and moreover, cannot be imputed to Flexi.  The court agrees.

A hostile work environment claim results when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  See Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004).  The test for "hostile work environment" has both an objective and a subjective component: "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it."  Id.  Whether a reasonable person would find a given work environment to be hostile depends on the

11

totality of the circumstances: "[c]onsiderations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." Id.

Even taking as true each of Absher's uncorroborated allegations as to Belsky, these incidents do not meet the threshold of severe and pervasive conduct required under Title VII.  See id. (concluding that incidents of harassment were not sufficiently severe to overcome lack of pervasiveness); see Quinn, 159 F.3d at 767-68 (concluding that two incidents of obviously offensive and inappropriate conduct not sufficiently severe or pervasive to create hostile work environment).  In this case, there were four complained-about incidents in less than a two-week period from March 28, 2001 to April 5, 2001.  These incidents were relatively few and occurred over a short period of time and thus were not pervasive under applicable law.  See Mormol, 364 F.3d at 59; see Holtz v. Rockefeller & Co., 258 F.3d 62, 70, 75-76 (2d Cir. 2001).  Further, Absher has not presented any evidence tending to show that the alleged conduct was physically threatening or humiliating, or that the conduct unreasonably interfered with her work performance.  See Mormol, 364 F.3d at 58.

12

Further, even if Belsky's conduct met this standard, his actions cannot be imputed to Flexi.  Id. at 59.  First, there is no evidence presented that Belsky was a supervisor.  See Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998) (holding that employers are presumed responsible, subject to certain defenses, for sexual harassment perpetrated by a victim's supervisor).  Moreover, there is no evidence in the record that Flexi failed to provided a reasonable avenue for Absher to bring her complaints or that Flexi knew of harassment but did nothing about it.  See Richardson v. New York State Dept. of Corr. Serv., 180 F.3d 426, 441 (2d Cir. 1999) (holding that when a harasser is a non-supervisory colleague, an employer is liable only if the employer either "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.").  Rather, the record shows that Absher complained to Ferraro on April 5, 2001 about Belsky's conduct, and that Belsky was subsequently reprimanded.  Absher's assertion that she complained to Flexi as early as 2000 is not corroborated.  Moreover, the record shows that when she complained to Ferraro regarding the March 28, 2001 incident, Absher discouraged Ferraro from addressing Belsky about his conduct.

For these reasons, the defendants' motion for summary judgment is granted as to Counts One and Five of the amended complaint.

13

II.  <u>Gender Discrimination Under Federal and State Law</u>

Absher also asserts gender discrimination claims against Flexi pursuant to Title VII and CFEPA. Specifically, Absher complains that Flexi favored male employees over female employees for bonus payments; that she did not receive a bonus for 1998, 1999, or 2000; that Flexi offered stock options to male employees in 1998 and 1999, but not to her or other female employees; and that Flexi required female employees to share office space and placed them in cubicles, but not male employees.  Absher maintains that this alleged disparate treatment violates Title VII and CFEPA because it was motivated by gender.  <u>See</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 93 (2003) ("Since 1964, Title VII has made it an 'unlawful employment practice for an employer ... to discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin.")

The defendants maintain that Absher's claims concerning bonuses and stock options are time-barred because Absher did not timely bring them before the EEOC or the CCHRO.  The court agrees.

As discussed above, a plaintiff seeking to invoke the protections of Title VII must file a charge of discrimination with the EEOC within 300 days of the alleged act of discrimination.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1).  Claims alleging discriminatory incidents that are not brought within that 300-day

14

limit are barred in a suit in federal court.  See Quinn, 159 F.3d at 765.  Similarly, in order to invoke CFEPA, a plaintiff is required to file an administrative charge with the state agency within 180 days of the alleged discriminatory conduct.  See Conn. Gen. Stat. § 46a-82(e).

Absher filed her complaint with the CHRO on May 2, 2001. Thus, any alleged actions that occurred prior to July 5, 2000, would be barred under Title VII, and any alleged discriminatory conduct that occurred prior to November 2, 2000, would be barred under the CFEPA.  Thus, Absher's claims regarding bonus payments prior to July or November 2000, and her claims regarding stock option offerings in 1998 or 1999 are time-barred.

Moreover, these claims are not saved under the continuing-violation exception to Title VII.  Under that exception, a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations.  See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d. Cir. 1997).  However, discrete incidents of discrimination that are unrelated to an identifiable policy or practice, on the other hand, "will not ordinarily amount to a continuing violation," unless such incidents are specifically

related and are allowed to continue unremedied for "so long as to
amount to a discriminatory policy or practice." See id. (citing
Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.
1996)). Absher presents no evidence to establish that Flexi had
such a policy and there is no evidence of such a policy in the
record.

Further, as the defendants point out, Absher's assertions
that she did not receive stock options and bonuses are factually
incorrect. According to defendants' uncontroverted evidence,
Absher received a grant of stock options for 1999, and additional
stock options in January, 2001. In addition, Flexi's evidence
shows that 43 of the 117 employees who received grants of stock
options in 1999, were women including Absher. The defendants
also provide evidence showing that Absher received a bonus of
$3,000 for 1999, which was paid in April 2000, and that she
received a payment of $2,814 as a discretionary bonus in August
2000.

With regard to Absher's claim of gender discrimination based
on her reassignment to a shared office, the defendants argue that
this type of conduct does not amount to an adverse employment
action within the meaning of Title VII. The court agrees.

In Galabya v. New York City Bd. of Ed., 202 F.3d 636, 640
(2d Cir. 2000), the Second Circuit held that an adverse
employment action requires a materially adverse change, something

more disruptive than a mere inconvenience or an alteration of job
responsibilities.  In this case, Absher was assigned to share
office space with a co-worker three days a week.  Absher has not
presented any evidence that such assignment was a materially
adverse change, or more disruptive than a mere inconvenience.
Further, Absher's factually unsupported assertion that Flexi
required female employees, but not male employees, to share
offices or assigned them to cubicles, is insufficient to save her
claim.

For these reasons, the court grants summary judgment as to
the Second and Sixth Counts.[3]

III. <u>The Retaliation Claims</u>

In the Fourth and Seventh Counts, Absher alleges retaliation
in violation of Title VII and Conn. Gen. Stat. § 46a-60(a)(4).[4]
Specifically, Absher alleges that she complained to the human
resources office, the president, and the vice-president of Flexi
about Belsky's conduct and that as a result of her complaints,
Flexi terminated her employment in retaliation.

---

[3]The Third Count, titled "Hostile Work Environment" merely
repeats the allegations of gender discrimination alleged in Count
Two.  Inasmuch as the Third Count merely duplicates Absher's
previous claims, Count Three of the Amended Complaint is also
dismissed.

[4]These claims are addressed together as the same principles
applicable to Title VII retaliation claims apply to retaliation
claims under the CFEPA.  <u>See</u> <u>Shaw v. Greenwich Anesthesiology
Associates, P.C.</u>, 137 F.Supp. 2d 48 (D.Conn. 2001).

To establish a prima facie case of retaliation, Absher must show that 1) she engaged in a protected activity; 2) Flexi was aware of the activity; 3) Flexi took adverse action against her; and 4) there was a causal connection between the protected activity and the adverse action which gives rise to an inference of retaliatory intent.  Galdieri-Ambrosini v. National Realty and Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Flexi argues that summary judgment may enter on the retaliation claims for two reasons: (1) Absher was not complaining about conduct that was unlawful or could reasonably be considered unlawful under Title VII, and (2) there is no evidence of a causal connection between Absher's complaints regarding Belsky's conduct and her employment termination.

As to the first argument, that Absher was not engaged in protected activity, Absher need not show that the conduct she complained of was actually a violation of Title VII, but only that she possessed a good faith reasonable belief that the underlying employment practice was unlawful under Title VII.  See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988); see Quinn, 159 F.3d at 769. Accordingly, the court must assess the reasonableness of Absher's belief in light of the totality of circumstances.  See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).  Here, there are four incidents of alleged misconduct by Belsky, one

involving Belsky's touching of Absher's pelvic area while he
motioned to her and handed her a piece of paper, and the others
involving his examination of either her clothing or the color of
her clothing.  While the conduct Absher alleges is clearly
unprofessional, the court does not conclude that it satisfies
the first prong of the prima facie case.

Even if the court were to conclude that Absher's belief that
she was engaged in protected activity was reasonable, she fails
to provide evidence of the requisite causal connection between
her complaints to Flexi regarding Belsky's behavior and her
termination.  The only evidence in the record that could arguably
support her claim is the time frame.  See Davis v. State Univ. of
N.Y., 802 F.2d 638, 642 (2d Cir. 1986) ("Proof of causal
connection can be established indirectly by showing that the
protected activity was followed closely by discriminatory
treatment."); see Quinn, 159 F.3d at 769 (finding that causal
connection could be inferred where termination occurred less than
two months after complaint was made).

Absher lodged complaints about Belsky's conduct from March
28, 2001 through April 9, 2001, and was terminated on April 25,
2001.  While such temporal proximity could permit an inference of
causation, the specific facts of this case do not permit such a
finding.  First, there is ample evidence in the record showing
Absher's work-performance shortcomings, specifically her failure

to perform her responsibilities connected to Flexi User Day and
her failure to return timely to work from her approved vacation
request.  Even more, the record demonstrates that her department,
for business reasons, faced pressure to reduce its headcount and
that Flexi laid off employees in Absher's department both
immediately before and after Absher's termination.  Moreover,
Absher submits no evidence whatsoever of retaliatory animus, nor
is there any in the record.  Therefore, summary judgment is
appropriate on Absher's retaliation claims.

IV.  <u>State Law Contract Claims</u>

Absher claims that Flexi breached an "implied contract"
regarding sexual harassment in the workplace and the payment of
bonuses and stock options when it terminated her employment, that
Flexi breached the covenant of good faith and fair dealing, and
asserts a claim of promissory estoppel.  Flexi argues that each
of these claims fail as a matter of law.  The court agrees.

It is well established that the at-will employment
relationship does not limit the terminability of an employee's
employment.  <u>Toroysan v. Boehringer-Ingelheim Pharm. Inc.</u>, 234
Conn. 1, 14 (1995).  A claim by a plaintiff that she somehow came
to believe she had a contract right cannot bind the employer
without evidence of a contractual commitment to be bound.
<u>Christenson v. Bic Corp.</u>, 18 Conn.App. 451, 458 (1989).
Similarly, claims for implied contract and promissory estoppel

20

depend on the existence of a clear and definite promise.  <u>See</u>
<u>Finley v. Aetna Life & Cas. Co.</u>, 50 Conn. App. 394, 409 (1985);
<u>D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.</u>, 202
Conn. 206, 214 (1987).

In this case, Absher has not submitted any evidence of an
employment contract.  Indeed, the record is clear that Absher's
employment with Flexi was at-will.  Absher signed an
acknowledgment that her employment was at will.  There is no
evidence that there was any contractual commitment as to the
duration of her employment.  Flexi is correct that Absher cannot
claim the existence of an implied contract.

Nor can she claim reasonable reliance on a promise.  There
is absolutely no evidence that Flexi made any of the promises
alleged in Absher's amended complaint.  Absher's claim alleging
promissory estoppel fails as a matter of law.

Further, it is well established that under Connecticut law,
an implied covenant of good faith and fair dealing presupposes a
contract to which the alleged covenant applies.  <u>See</u> <u>Maloney v.
Connecticut Orthopedics, P.C.</u>, 47 F.Supp. 2d, 244, 249 (D. Conn.
1999) (holding that to assert a claim based on the covenant of
good faith and fair dealing, a contract must have been in
existence).  Because there is no underlying contract, there can
be no breach of the covenant of good faith and fair dealing.

Accordingly, the court dismisses the eighth, ninth and tenth

counts.

V.    <u>Assault and Battery</u>

In the eleventh count, Absher claims that Belsky's conduct placed her in fear of being victimized and touched and thus constituted an assault and that his touching of her was unwanted and offensive and thus constituted a battery.

Under Connecticut law, an assault requires an overt act evidencing an attempt to do bodily harm, which falls short of battery.  <u>See</u> <u>Marczeski v. Law</u>, 122 F.Supp. 2d 315, 325 (D. Conn. 2000).  A battery is a completed assault.  <u>See</u> <u>Smith v. City of New Haven</u>, 166 F.Supp.2d 636, 644 (D. Conn. 2001).  To establish a claim for assault and battery, a plaintiff must prove that a defendant used force or violence and that the application of force or violence was unlawful.  <u>Williams v. Lopez</u>, 64 F.Supp. 2d 37, 47 (D.Conn. 1999).

None of the alleged incidents establish assault or battery. Absher has not adduced any evidence to show an unlawful touching with the intent to inflict injury.  Accordingly, the court grants the motion for summary judgment as to the eleventh count.

VI.    <u>Negligent Supervision</u>

The twelfth count is a claim for negligent supervision against Flexi based on Belsky's conduct.  Flexi moves for summary judgment on the grounds that Belsky's conduct did not constitute sexual harassment or any other tortious conduct.  Furthermore,

Flexi argues that Belsky's conduct cannot properly be imputed to it.  The court agrees.

In a claim of negligent supervision, a plaintiff must establish that the employer knew or had reason to know that the employee had a propensity to engage in tortious conduct.  See Shanks v. Walker, 116 F.Supp.2d 311, 314 (D. Conn 2000); Wilburn v. Fleet Fin. Group, Inc., 170 F.Supp. 2d 219, 242 (D. Conn. 2001).

Absher maintains that Flexi knew of Belsky's offensive conduct because in November, 2000, and several times thereafter, including April 5, 2001, she reported it to Flexi's director of human resources, that other employees had filed claims of sexual harassment, that she complained to Nolan on April 6, 2001, that on April 9, 2001, Grywalski told her that Flexi would not tolerate such conduct, and that she repeatedly complained to Belsky about his offensive conduct, yet Flexi failed to investigate, address or stop his conduct.

There is nothing in the record to support Absher's allegations that Flexi took no action even though it knew of Belsky's conduct by virtue of her complaints to the director of human resources and to Nolan as well as complaints of other employees about Belsky's behavior.  To the contrary, the evidence shows that Ferraro acted promptly when Absher brought specific complaints regarding Belsky's offensive conduct to her attention

23

and that Flexi warned Belsky that his conduct was inappropriate and could result in disciplinary action, including termination. Indeed, the record shows that Ferraro agreed to speak to Belsky on April 5, 2001, that on April 6, 2001, Nolan offered to transfer Absher to a different position where she would not be in proximity to Belsky, and that on April 9, 2001, Ferraro warned Belsky about his behavior and Grywalski, the president of Flexi, informed Absher that Flexi would not tolerate Belsky's behavior.

Accordingly, Absher's factually unsupported claim of negligent supervision fails as a matter of law.

VII. <u>ERISA</u>

In the thirteenth count, Absher claims that she was prevented from exercising stock options under Flexi's Stock Option Agreement in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Flexi moves for summary judgment on the basis that a stock option agreement is not an employee benefit plan, and thus is not governed by ERISA.

Absher has not presented any evidence that Flexi's stock option agreement constitutes a pension benefit plan covered by ERISA. To the contrary, according to Flexi's evidence, the stock option plan does not provide for deferment of payments to the termination of covered employment or beyond, or that payments are designed to provide retirement income. Accordingly, the stock option plan is not covered under ERISA.

<u>CONCLUSION</u>

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED as to all counts.  The clerk is directed to enter judgment for the defendants and close the file.

SO ORDERED this 30th day of September, 2005, at Bridgeport, Connecticut.


　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　        /s/
　　　　　　　　　　　　　　　    Alan H. Nevas
　　　　　　　　　　　　　　　United States District Judge